UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

TIMOTHY G. METZGER                           Case No. 03-20360-dob
d/b/a METZGER CONSTRUCTION               Chapter 7 Proceeding
d/b/a T. METZGER CONSTRUCTION            Hon Daniel S. Opperman
and JULIE M. METZGER,

       Debtors.
_____/
KAREN E. EVANGELISTA,

       Plaintiff,

v.                                                             Adversary Proceeding
                                                             Case No. 05-2003-dob

COREY METZGER, JENNIFER METZGER,
MIDLAND COUNTY HOUSING DIVISION and
FIRST NATIONAL BANK OF AMERICA,

       Defendants.
_____/

## OPINION REGARDING TRUSTEE'S MOTION
## TO ENFORCE SETTLEMENT AGREEMENT

This case is before the Court for the interpretation of a Settlement Agreement entered into between and among the parties. The parties had previously settled this Adversary Proceeding, but the first settlement failed. The parties again attempted to settle this matter and placed a settlement on the record on January 7, 2008. The parties subsequently entered into a Stipulation to Settle Avoidance Action which incorporated the terms and conditions placed on the record on January 7, 2008. Corey and Jennifer Metzger (the "Metzgers") were to pay a regular monthly installment to Defendant, First National Bank of America, to pay taxes and utilities in regard to the real estate in

1

question, and to pay the mortgage amount to Midland County Housing Division in care of the Plaintiff, Karen E. Evangelista. Payments continued for some time, but the Metzgers were unable to continue these payments.

At the January 7, 2008, hearing, the parties agreed to a specific time table which allowed the Metzgers to control the sale of the property until March 1, 2008, without any significant guidelines. From March 1, 2008, through May 31, 2008, the parties agreed that the property would be listed at a certain price. If an offer was not received by May 31, 2008, the listing price was agreed to be reduced by $5,000. If no offer was received by August 31, 2008, then the parties agreed that the property would be sold by auction by the Trustee. It is clear from the statements made at the January 7, 2008, hearing and the Stipulation, that by August 31, 2008, the Metzgers would no longer have any control whatsoever of the sale of the property.

Given the failure of the Metzgers to make payments, as well as a lack of cooperation with the selected real estate agent, the Trustee filed a Motion to Enforce Settlement Agreement. The Court conducted a hearing on the Trustee's Motion on August 14, 2008, and ordered that the property listing terminated immediately and that the Trustee be allowed to proceed immediately to auction sale as she saw fit. The Court reserved the issue of the payment by the Metzgers for past due payments to First National Bank of America and Midland County Housing Division. The Court subsequently issued an Opinion on October 27, 2008, which directed counsel for the Metzgers to prepare an Order consistent with the Opinion. This Order was prepared, but objected to by the Trustee. The Court conducted a hearing on the Trustee's Objection to the Order on January 15, 2009.

This Opinion supplements and clarifies the October 27, 2008, Opinion of the Court. To the extent necessary, the Court adopts and restates the October 27, 2008, Opinion as if stated in its entirety. Consideration of oral argument made by counsel and further reflection causes the Court to restate, and, where appropriate, reconsider its previous Opinion.

One of the well-settled laws of contract interpretation is that a court must examine the plain language of the contract. If the contractual language is clear, the court must enforce the contract according to its plain meaning. *Clevenger v. Allstate Ins. Co.*, 443 Mich. 646, 654, 505 N.W.2d 553, 557 (1993). If the contract is ambiguous, the court should look to extrinsic evidence to determine the intent of the parties. *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 60, 664 N.W.2d 776, 786 (2003). In the event the court cannot determine the intent of the parties, the contract must be construed against the drafter. *Id.* at 60-62, 786-87.

As to settlement agreements, the Sixth Circuit has often recognized and enforced the broad inherent authority and the equitable power of a court to enforce a settlement agreement. *Bostick Foundry Co. v. Lindberg*, 797 F.2d 280 (6th Cir. 1986); *Brock v. Scheuner Corp.*, 841 F.2d 151 (6th Cir. 1988). A court must find, however, that there is indeed a settlement. *Kulka v. National Distillers Products, Co.*, 483 F.2d 619 (6th Cir. 1973); *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414 (6th Cir. 2000).

The Trustee urges a position that in one respect is simple, but in another respect is complex and requires inferences to be drawn from the language of the Stipulation, as well as the statements of counsel on January 7, 2008. The Metzgers urge a position that is not as straightforward as that of the Trustee, but is grounded in a common sense and practical reading of the Settlement Agreement, as well as a foundation for why parties settle cases.

3

At first blush, it appears that the Settlement Agreement requires the Metzgers to continue to make these payments until the property is sold. Without reference to the January 7, 2008, transcript, it would appear that these payments would continue forever and that the Trustee could merely postpone the sale of the property while requiring the Metzgers to continue to make payments to First National Bank of America. Given the economics of this situation, which include the belief of all concerned that the sale proceeds of the property would not be sufficient to pay First National Bank of America, Midland County Housing Division, and the Trustee in full, the likelihood of the Metzgers receiving any money from this sale is economically unlikely. Morever, paragraph 6 of the Stipulation required Defendants to withdraw or waive any unsecured claim. Additionally, to the extent that the Metzgers are related to the Debtors, the Debtors are likewise prohibited from receiving any money from exemptions.

Against this backdrop is the question raised by the Metzgers on many instances, which is why the Metzgers would agree to continue to make payments ad infinitum with absolutely no opportunity to receive money. Part of the answer lies in the statements of counsel that at the time of the settlement the real estate was rented and generated income. Instead of allowing or requiring the Trustee to collect these rents, the Metzgers acted as a rent collector for the Trustee, as well as distributor of these monies. Unfortunately for all, the tenants left this property and there is no income stream left or subsequently created after their departure.

Additionally, the Metzgers had the right to completely control the sale of this property until March 1, 2008, and had gradually reduced control until August 31, 2008. In this setting, control of the sale was undoubtedly important to the Metzgers and is now important to the Trustee. From the record before the Court, it is clear that this control had some value to the Metzgers and formed a

4

consideration for their agreement to continue to make payments to First National Bank of America, Midland County Housing Division, and the Trustee.

After January 7, 2008, however, economic events occurred that were beyond the expectation or imagination of counsel, especially the extremely competent counsel in this case. These unforseen circumstances require this Court to attempt to parse and divide the duties, obligations, and rights of the parties against a dismal economic backdrop unforseen by anyone. Additionally, it is clear to this Court that finality is necessary and given a higher premium than in other cases.

The January 7, 2008, settlement incorporated in the Stipulation sets a bright line of control of August 31, 2008, that was slightly advanced by a subsequent Order of this Court. This bright line of August 31, 2008, requires the Court to make the following conclusions:

A. Corey and Jennifer Metzger were and are required to make the monthly mortgage payment to First National Bank of America until August 31, 2008.

B. Corey and Jennifer Metzger were and are required to pay property taxes and utilities relating to the real estate until August 31, 2008.

C. Corey and Jennifer Metzger were and are required to pay the mortgage amount to Midland County Housing Division in accordance with the Midland County Housing Division mortgage with payments directed to the Trustee.

Per the representation of counsel for the Metzgers on August 14, 2008, the Metzgers are to relinquish any claim they have to the real estate. Counsel for the Trustee is directed to prepare the necessary documents to evidence the transfer of all right, title, and interest held by Corey and Jennifer Metzger to the Trustee. Corey and Jennifer Metzger are directed to sign these documents within 14 days of tender to their counsel. In the event Corey and Jennifer Metzger timely perform

5

and sign the necessary documents, they shall not be responsible for any post-September 1, 2008, payments, fees, or costs to Plaintiff or any co-Defendants. In the event that the Metzgers do not timely perform all necessary acts to transfer all of their right, title, and interest to the real estate to the Trustee within 14 days of delivery of the documents to their counsel, Corey and Jennifer Metzger shall be responsible for all payments to the co-Defendants until they timely perform and shall also be responsible for fees and costs incurred by the Trustee in bringing this matter to the Court's attention.

In anticipation of a possible good faith objection that the Metzgers may have to certain documents prepared by the Trustee, counsel for the Trustee shall have 14 days from the date of tendering the documents to file an objection with this Court. Any duty or obligation of the Metzgers as identified in this Opinion shall be held in abeyance until the Court can address these objections.

The Court's analysis is based on a reading of the Stipulation, as well as the statements and representations of counsel on the record on January 7, 2008, August 14, 2008, and January 22, 2009. The Court has followed the plain meaning of words where such language exists. Where necessary, the Court has relied on the extrinsic evidence outlined above to construe ambiguous language.

The Court fully recognizes that this Opinion does not completely harmonize either the Stipulation or the January 7, 2008, settlement. From this Court's view, such a harmonization is in all probability impossible given today's economic climate.

The Court could determine that no agreement was truly entered into, but the economics of this situation, as well as the current economic climate in the State of Michigan dictate that settlement, and not a continuation of conflict, is in the best interests of all concerned. Moreover, the Court, after reviewing all the pleadings, the Stipulation, and the transcripts of the hearings in this

6

case, concludes that the parties reached a settlement on all material terms.

The Court will enter an Order consistent with this Opinion.

**Signed on March 02, 2009**

                                      **/s/ Daniel S. Opperman**
                              **Daniel S. Opperman**
                              **United States Bankruptcy Judge**